ORDERED.

Dated: October 16, 2015

*Karen S. Jennemann*
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| LAURA LEE SMITH, | ) Case No. 6:15-bk-01404-KSJ |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| RANDOLPH A. HEWITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adversary No. 6:15-ap-00061-KSJ |
| | ) |
| LAURA LEE SMITH, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Randolph Hewitt, and the Debtor, Laura Lee Smith, were business partners in various X-rated adult entertainment ventures, co-owned a home, and had a daughter. The parties ended their business and personal relationship in 2008, and since have litigated their grievances against the other asserting domestic violence, child support issues, paternity disputes, and, most relevant to this bankruptcy case, that the Debtor maliciously damaged their jointly

owned home when she moved from the house in June 2014. The issue is whether the judgment of approximately $10,000 for these damages is dischargeable under § 523 of the Bankruptcy Code,[1] whether the Debtor fraudulently transferred a portion of her interest in a business prior to filing her bankruptcy case, and whether the Debtor's failure to pay the Plaintiff before filing bankruptcy constitutes grounds for denying her a discharge under § 727 of the Bankruptcy Code. The Court finds that the Plaintiff has established no basis to deny the Debtor a discharge or to allow her debt to survive post-discharge.

The primary purpose of bankruptcy law is to provide an honest debtor with a fresh start by relieving the burden of indebtedness.[2] Courts construe objections to discharge or to the dischargeability of a particular debt liberally in favor of the debtor and strictly against the objecting party.[3] Plaintiff must prove his claims by a preponderance of the evidence[4] that the Debtor is not entitled to receive a discharge or to discharge his state court judgment against the Debtor.

The facts are largely undisputed. For several years, Debtor and Plaintiff lived together in their jointly owned home until their personal relationship deteriorated in 2008. Plaintiff moved out of the house but remained financially responsible for all future mortgage payments.[5] In December 2008, the Debtor signed a lease with an option to purchase the house requiring her to make monthly rental payments to the Plaintiff.[6]

Debtor lived in the home from 2009 to 2014. In June 2009, she stopped making payments on the lease. She testified that the mortgage company stopped accepting her payments. In 2010,

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq.*
[2] *Perez v. Campbell*, 402 U.S. 637, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971).
[3] *In re Trafford*, 377 B.R. 387, 392 (Bankr. M.D. Fla. 2007). *See also In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009).
[4] Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).
[5] Doc. No. 1.
[6] Pl.'s Ex. 3.

the Plaintiff filed for bankruptcy.[7] Debtor, however, continued to pay the utility bills, mow the lawn, and generally repair and maintain the home.

Plaintiff eventually sued to evict the Debtor from the home.[8] Debtor and the Plaintiff reached a stipulated agreement in the eviction case.[9] The County Court entered an order requiring the Debtor to vacate the property, execute a quit claim deed to the property, pay funds into the Court Registry, and allow for a property inspection.[10] The County Court entered another order requiring the Debtor to vacate the property by June 28, 2014 at 5 p.m.,[11] and the Debtor vacated the property a few days early on June 26, 2014.

Plaintiff then sued the Debtor for damage to the house she allegedly caused before she moved out. The County Court, finding damage to the home, entered a final judgment for $9,458 in Plaintiff's favor on July 31, 2014 (the "Judgment").[12] The Debtor testified that, in January 2015, the County Court later issued a charging order directing the Debtor to use her income to pay the Plaintiff and to provide an accounting for a business, AAH productions, LLC, she co-owns with her husband, Peter Smith.

On February 19, 2015, Debtor filed her petition for bankruptcy.[13] Plaintiff, acting *pro se*, filed this adversary proceeding primarily asserting that the Judgment is not dischargeable and that the Debtor should pay him. Plaintiff called several witnesses,[14] including the parties, to testify about the alleged damage to the home. The home inspector hired and called by the

---

[7] Plaintiff filed his Chapter 7 bankruptcy petition on May 31, 2010. Case No. 6:10-bk-09578-ABB. A discharge was entered on November 17, 2010. Doc. No. 17. The discharge eliminated any personal financial liability Mr. Hewitt had under the mortgage encumbering the parties' co-owned home.
[8] Seminole County Civil Court Case No. 2013-CC-004065.
[9] Pl.'s Ex. 5.
[10] Pl.'s Ex. 5.
[11] Pl.'s Ex. 6.
[12] A copy of the final judgment is attached to Doc. No. 12, Ex. 21.
[13] Main Case No. 6:15-bk-15-01404-KSJ.
[14] Doc. No. 1. The trial was held on September 1, 2015.

Plaintiff was Erik Coplin. Mr. Coplin, who visited the home on July 16, 2014,[15] testified that the damage done to the property resulted from deferred maintenance, not any malicious or intentional damage. A neighbor, Marianne O'Brien, buttressed this testimony by stating that the property was in good condition when she visited it in June 2014. Debtor testified she maintained and repaired the home as much as she was financially able during her residency, and that she paid the utilities and met other similar burdens of homeownership. Debtor acknowledged the house needed repairs when she left but she testified that she caused no intentional or malicious damage to the home upon her exit. The Court finds that, although the Debtor is financially responsible for damages associated with deferred maintenance to the home, as determined by the County Court, she did not intentionally or maliciously damage the home.

Plaintiff first argues that the Judgment is not dischargeable under Section 523(a)(6) of the Bankruptcy Code that excepts debts for "willful and malicious injury by the debtor to another entity or to the property of another entity."[16] To prevail on such a claim, "a plaintiff must prove by a preponderance of evidence that a debtor: 1) deliberately and intentionally; 2) injured the plaintiff or the plaintiff's property; 3) by a willful and malicious act."[17] Willfulness and malice are separate and distinct. "Willfulness" implies intentional behavior; "malice" connotes a malevolent purpose for the debtor's action.[18] A debtor commits a willful injury when he commits an intentional act to cause injury or which he knows is substantially certain to cause injury.[19] "Substantial certainty exists if a debtor knew and appreciated the substantial likelihood of injury

---

[15] Pl.'s Ex. 9.
[16] 11 U.S.C. § 523(a)(6) (2012).
[17] *In re Howard*, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001) (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163-65 (11th Cir. 1995)).
[18] *Howard*, 261 B.R. at 520.
[19] *See Id.*; *In re Dowdell*, 406 B.R. 106, 114 (Bankr. M.D. Fla. 2009); *In re Vestal*, 256 B.R. 326, 329 (Bankr. M.D. Fla. 2000).

to the party objecting to discharge."[20] A malicious act is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."[21] Further, "[t]he established law is clear that a debtor must commit some type of intentional tort directed against the claimant or his property in order for a court to find that the resulting damages are non-dischargeable."[22]

The Judgment itself does not establish that the Debtor's actions were willful and malicious but merely orders the Debtor to pay a sum of money ($9,458) to the Plaintiff. Likewise, the record does not establish that the Judgment was entered due to a willful and malicious act of the Debtor. Mr. Coplin and Ms. O'Brien both impartial witnesses testified that when the Debtor left the home it was in relatively good condition but needed some repairs. Mr. Coplin specifically testified that Debtor's damage to the property was likely the result of deferred maintenance and not from any intentional damage. Unaddressed deferred maintenance does not reach the level of malice or willfulness required to except a debt from discharge under Section 523(a)(6). [23]

Plaintiff next argues that the Judgment is not dischargeable under Section 523(a)(2) of the Bankruptcy Code. The requirements of Bankruptcy Code Sections 523(a)(2)(A) and (B) are similar. Both require a false representation made by the debtor intending to deceive a creditor, justifiable or reasonable reliance by the creditor upon the representation, and resulting damages. Section 523(a)(2)(A) requires that the creditor sustain a loss due to the misrepresentation, and Section 523(a)(2)(B) requires the misrepresentation to have been made in a writing representing the debtor's financial condition.

---

[20] *In re Vestal*, 256 B.R. 326, 329 (Bankr. M.D. Fla. 2000); *see Howard*, 261 B.R. at 520.
[21] *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *In re Ikner,* 883 F.2d at 991 (quoting *Sunco Sales, Inc. v. Latch (In re Latch),* 820 F.2d 1163, 1166 n. 4 (11th Cir.1987))) (internal quotations omitted).
[22] *In re Al-Suleiman*, 461 B.R. 893, 897 n.22 (Bankr. M.D. Fla. 2011) (quoting *In re Nofziger*, 361 B.R. 236, 243 (Bankr. M.D. Fla. 2006)).

Under Section 523(a)(2)(A), a debtor cannot discharge a debt based on "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[24] Under Section 523(a)(2)(A), a plaintiff must prove: (i) the debtor made a false representation to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss because of the misrepresentation.[25] Plaintiff has met no element of the 523(a)(2)(A) test.

Plaintiff has not put forth any evidence that the Debtor made a false representation to deceive the Plaintiff or that the Plaintiff relied on any alleged misrepresentations of the Debtor. Plaintiff primarily relies on alleged fraudulent tax returns filed by the Debtor to prove that she lied about her income to "evade collection" of the Judgment.[26] Plaintiff points to the Debtor's statements made to her Chapter 7 Trustee to prove that the Debtor lied about paying rent, a mortgage, taxes, and homeowner's association fees during her time at the property.[27] Plaintiff alleges that the Debtor also underestimated her ownership interest in a company she co-owns with her husband.[28] These allegations do not satisfy the elements of the 523(a)(2)(A) test. The statements all were made *after* the Judgment was entered and *after* she moved out of the house. Plaintiff could not have justifiably relied on any of these post-Judgment statements. Similarly, the Judgment itself does not establish that Debtor's actions were based on "false pretenses, a false representation, or actual fraud." Rather, the state court merely determined the Debtor owed Plaintiff almost $10,000 for repairs needed to the home.

Section 523(a)(2)(B) provides that a debt is excepted from discharge if the debt is for:

---

[23] Plaintiff also argues that the Judgment is non-dischargeable under Section 523(a)(19)(b)(iii) of the Bankruptcy Code but "this subsection allows for an exception for various forms of securities violation and has no applicability to this case." *In re Everly*, 346 B.R. 791, 796 n.3 (B.A.P. 8th Cir. 2006).
[24] 11 U.S.C. § 523(a)(2)(A).
[25] *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).
[26] Doc. No. 1.
[27] Doc. No. 1.

> "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."[29]

There is no evidence that the Debtor made a false statement in writing to the Plaintiff regarding her financial condition upon which he could have relied on for any reason. Even assuming that the tax returns and schedules were false, they were discovered by the Plaintiff post-Judgment. Section 523(a)(2) does not except the debt from discharge.

Plaintiff next argues that the Debtor fraudulently transferred a portion of her interest in a business to her husband and this transfer was made to "avoid payment of Plaintiff's judgment."[30] Plaintiff lacks standing to assert a fraudulent transfer claim.[31] If the Debtor fraudulently transferred any interest in a business, the claim is property of the Debtor's estate. The Chapter 7 Trustee, and only the Chapter 7 Trustee, had standing to assert this claim. He pursued no fraudulent transfer claim. Plaintiff must but did not obtain permission to assert any fraudulent transfer claim before filing the complaint, and the claim fails.

Plaintiff lastly cites §§ 727(c), (d), and (e) of the Bankruptcy Code to support his ambiguous claim that the Court should revoke the Debtor's discharge[32] alleging that the Debtor is "attempting to abuse the bankruptcy process to avoid payment of Plaintiff's judgment."[33] Debtors' schedules[34] list almost $500,000 in unsecured debts and assets totaling roughly $9,000. She is a student receiving meager income of $210 per month. Even if these items were grossly

---

[28] Doc. No. 1.
[29] 11 U.S.C. § 523(a)(2)(B).
[30] Doc. No. 1. at ¶ 45.
[31] Section 548 provides that "[t]he *trustee* may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if" the trustee meets the requirements of any subsections of 548. (emphasis supplied).
[32] Doc. No. 1. Debtor received her discharge on July 2, 2015. Doc. No. 20 in the Main Case.
[33] Doc. No. 1. at ¶ 52.
[34] Doc. No. 11.

over or under stated, she filed bankruptcy to address substantial financial challenges, not to evade paying the Judgment. Plaintiff has failed to show why this bankruptcy was abusive or filed in bad faith, or why the Court should revoke her discharge.

Plaintiff has proven no reason the Court should revoke the Debtor's discharge or why her debt to the Plaintiff is not discharged. A Final Judgment in favor of the Debtor and against the Plaintiff simultaneously shall be entered. Any debt owed by the Debtor to the Plaintiff is forever discharged and not collectible.

###

Copies furnished to:

The Clerk is directed to serve a copy of this order on all interested parties.